UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THERESA DIANE
MONTMARQUET,

     Plaintiff,

v.                               Case No.:  8:23-cv-823-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## OPINION AND ORDER

Plaintiff Theresa Diane Montmarquet seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits and for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a reply. As explained below, the decision of the Commissioner is **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.   Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.   Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.   Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C.   Procedural History

On May 11, 2020, Plaintiff applied for a period of disability and disability insurance benefits, and for supplemental security income. (Tr. 125, 126, 384-397). Plaintiff alleged a disability onset date of February 1, 2018. (Tr. 384, 388). Plaintiff later amended the alleged onset date to July 16, 2019. (Tr. 10, 67). The applications were denied initially and on reconsideration. (Tr. 125, 126, 175, 176). Plaintiff requested a hearing, and on August 2, 2022, a hearing was held before Administrative Law Judge Amber Downs ("ALJ"). (Tr. 61-96). On October 19, 2022, the ALJ entered a decision finding Plaintiff not under a disability from July 26, 2019, through the date of the decision. (Tr. 10-31).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on March 7, 2023. (Tr. 1-5). Plaintiff began the instant action by Complaint (Doc. 1) filed on April 17, 2023, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 14).

### D.   Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through June 30, 2023. (Tr. 13). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 26, 2019, the amended alleged onset date. (Tr. 13). At step two,

the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease, cervical and lumbar spine; scoliosis; arthritis; hypertension." (Tr. 13). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 16).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> The claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) with the following limitations: The claimant could occasionally lift or carry 20 pounds; could frequently lift or carry 10 pounds; could sit for a period of six (6) hours; stand for a period of six (6) hours; walk for a period of six (6) hours; and push/pull as much as she could lift/carry. Postural limitations would include occasionally climbing ramps and stairs; occasionally climbing ladders, ropes, or scaffolds; could frequently balance; occasionally stoop, kneel, crouch, and crawl. Environmental limitations would include frequent exposure to unprotected heights, moving mechanical parts; frequent exposure to dusts, odors, fumes, and pulmonary irritants, extreme cold, extreme heat; and frequent exposure to vibration.

(Tr. 17).

At step four, the ALJ found Plaintiff was capable of performing her past relevant work as a medical assistant. (Tr. 28). The ALJ further found that this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 28). Alternatively, the ALJ proceeded to step five and found that

considering Plaintiff's age (56 years old on the amended alleged disability onset date), education (at least high school), work experience, acquired work skills, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 29). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

(1)   Phlebotomist, DOT 079.364-022, light, semi-skilled, SVP 3

(2)   Medical record clerk, DOT 245.362-010, light, semi-skilled, SVP 4

(Tr. 30). The ALJ concluded that Plaintiff had not been under a disability from July 26, 2019, through the date of the decision. (Tr. 30).

## II.   Analysis

On appeal, Plaintiff raises two issues:

> (1)   Whether the ALJ properly assessed the persuasiveness of the opinions of Dr. Merin and Dr. Foster; and
>
> (2)   Whether the ALJ erred in failing to account for Plaintiff's mental limitations when finding she could perform her past relevant work or other skilled jobs.

(Doc. 18, p. 1, 4, 8, 10; Doc. 23).

## A.   Persuasiveness of Medical Opinions

Plaintiff argues that the ALJ erred in failing to properly credit the opinions of Jeffrey M. Merin, Ph.D. and Timothy Foster, Ph.D. who Plaintiff claims found her far more limited than reflected in the RFC and, if properly credited, would meet the

burden to show she was disabled. (Doc. 18, p. 8). In essence, Plaintiff argues that the ALJ erred in evaluating these two opinions. The same legal authority applies to both opinions.

The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given these five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 416.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and

consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. §§ 404.1513(a)(2)-(3), 416.913(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history,

clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

### 1.     Dr. Merin's Opinion

On July 26, 2019, Plaintiff was referred by the Division of Vocational Rehabilitation to Jeffrey M. Merin, Ph.D. for a learning disability evaluation and general personality assessment. (Tr. 610-22). Dr. Merin completed a psychological evaluation and prepared a Psychological Report. (Tr. 610-22).

On examination, Dr. Merin found Plaintiff oriented in all spheres, casually dressed, neatly groomed, cooperative, compliant, putting forth good levels of effort, friendly, polite, respectful, having normal communication skills, having occasional confusion in response to multi-step commands/tasks and abstraction, and generally depressed with no suicidal or homicidal ideations. (Tr. 611). After testing, Dr. Merin found Plaintiff at the low end of the low average range for verbal comprehension, perceptual reasoning, active working memory, and processing speed, with a full-scale IQ score of 78, which placed her in the borderline range. (Tr. 612). He also found Plaintiff within the low average range for short-term and long-term memory on one test and in the significantly impaired range on another test. (Tr. 614). He further found she had difficulty in interpreting and translating verbal instruction to spatial context. (Tr. 614).

In the decision, the ALJ thoroughly summarized Dr. Merin's psychological evaluation report. (Tr. 18-19). Later in the decision, the ALJ found Dr. Merin's opinion generally unpersuasive:

> Dr. Merin, the psychologist who evaluated the claimant in connection with vocational rehabilitation services, indicated in his report that because of the claimant's cognitive impairments and level of confusion, those with whom the claimant worked should ensure that all goals, responsibilities, and communications are clearly articulated, in written form, and reviewed on a frequent basis. (Exhibit 4F) The undersigned finds this opinion generally unpersuasive. While Dr. Merin's opinion at that time was supported by his own observations of the claimant and her performance on standardized testing, these findings are not consistent through the record. Rather, subsequent psychiatric and psychological evaluations indicated generally adequate cognitive functioning with mostly mood symptoms observed. (e.g. Exhibits 9F, 17F, 19F, 20F) His opinion is also inconsistent with the claimant's actual activities of daily living, including caring for her elderly mother and taking care of meal preparations and other household responsibilities. (e.g. Exhibit 4E, Hearing testimony) Accordingly, while the undersigned agrees the claimant does have medically determinable mental impairments that result in mild limitations, the confusion and other findings noted by Dr. Merin are not reflected elsewhere in the record and the longitudinal evidence does not support the specific mental accommodations indicated by Dr. Merin.

(Tr. 28).

In essence, the ALJ recognized that Dr. Merin's opinion of Plaintiff's cognitive impairments and level of confusion, which would require that all goals, responsibilities, and communications were clearly articulated in written form and reviewed on a frequent basis was supported by his own observations during the one-time examination and was supported by his observations and her performance on the

testing that day. (Tr. 28). At the same time, the ALJ found Dr. Merin's opinion was inconsistent with other psychiatric and psychological evaluations that showed adequate cognitive functioning with mostly mood symptoms and then cited such evaluations. (Tr. 28). The ALJ also found that Dr. Merin's opinion was inconsistent with Plaintiff's daily activities, which included caring for her elderly mother, meal preparations, and other household responsibilities. (Tr. 28). While the ALJ agreed that Plaintiff had a medically determinable mental impairment that results in mild limitations, the ALJ found the other evidence of record did not support Dr. Merin's findings as to confusion and did not support requiring all goals, responsibilities, and communications be clearly articulated, in written form, and reviewed on a frequent basis. (Tr. 28).

Plaintiff argues that other evidence supports Dr. Merin's opinion, such as January 2022 report finding Plaintiff's speech was decreased in rate and rhythm, mood was depressed, and affect restricted and a February 2022 progress note, which found Plaintiff's insight and judgment impaired. (Doc. 18, p. 11; Tr. 754, 755). These records as well as the others cited by Plaintiff do not support Dr. Merin's finding that Plaintiff's cognitive impairments and level of confusion require all goals responsibilities, and communications be clearly articulated, in written form, and reviewed on a frequent basis. Here, the ALJ complied with the regulations and found that Dr. Merin's own examination and testing supported his opinion, but also found

that Dr. Merin's findings were inconsistent with the other evidence of record and thus his opinion was generally unpersuasive. Substantial evidence supports the ALJ's consideration of Dr. Merin's opinion.

### 2. Dr. Foster's Opinions

On September 9, 2020 and May 17, 2021, Timothy Foster, Ph.D. conducted disability evaluations of Plaintiff. (Tr. 670-73, 722-25). At the September 2020 exam, Plaintiff could identify the year, season, month, date, day of the week, state, county, and city where the office was located. (Tr. 671-72). She was fully cooperative, showed no problems sustaining attention, was of average intelligence, and her mood was self-described as depressed, (Tr. 671-72). She could do basic math, could spell the word, "world" forward but not backward, could recall a brief list of items immediately and five minutes later, could follow simple 3-step instructions, could read and write, and was able to copy a simple design. (Tr. 672). He found Plaintiff's judgment and insight appeared to be within normal limits. (Tr. 672). As to functional limits, Dr. Foster found Plaintiff was able to complete personal care without reminders, was able to make simple meals, could go to the supermarket by herself, could act appropriately around strangers, could read and understand an article, and could watch, focus and understand a television show. (Tr. 672). He also found Plaintiff was able to manage her money. (Tr. 672). Dr. Foster further found that Plaintiff had the following residual functioning:

> She can understand, remember and carry out simple and
> complex instructions. She relates adequately to peers,
> supervisors and public. Memory and concentration appear to
> be within normal limits. She can complete a normal workweek
> without interruptions from psychologically based symptoms.
> She does appear to have some mobility limits.

(Tr. 673).

At the May 17, 2021, disability evaluation, Dr. Foster generally made the same findings on the mental status exam as in the earlier report, other than Plaintiff could spell the word, "world" forward and backward. (Tr. 723-24). On functional limits, Dr. Foster found Plaintiff could act appropriately around strangers for a brief time, but could not be on her feet all day or interacting with customers all day. (Tr. 724). He found she lacked the emotional energy to be at work all day. (Tr. 724). He then found Plaintiff's residual functioning as follows:

> Theresa can understand, remember and carry out simple and
> complex instructions. She relates inadequately to peers,
> supervisors and public because she has limited energy from her
> chronic pain and her heart attack. Memory and concentration
> appear to be fair but she finds that she often cries and has
> trouble coping with stress. She would have trouble completing
> a normal workweek and would have serious interruptions from
> her psychologically based symptoms of anxiety and depression
> and her low coping ability. I do not believe she could keep even
> a low stress job.

(Tr. 725).

In the decision, the ALJ thoroughly summarized both of Dr. Foster's evaluations and opinions. (Tr. 20-21, 27). The ALJ found Dr. Foster's earlier opinion persuasive, but not the later opinion:

The undersigned finds Dr. Foster's earlier opinion is persuasive; however, his later opinion is not. Dr. Foster indicated in both reports that his opinions were based on his interview, observations, and history provided by the claimant, which are well documented in his report. However, her mental status and self-reported history were essentially the same at both of these evaluations, with minimal mental status examination findings at both. In fact, the findings corresponding with Dr. Foster's much more restrictive opinion are improved from her prior evaluation, in that she was able to spell the word "world" backward. Given that her psychological evaluation was generally normal at both of these opinions, Dr. Foster's earlier opinion is better supported. Furthermore, in addition to being internally inconsistent, Dr. Foster's 2020 opinion is more consistent with the fully developed record, which documents relatively minimal mental symptoms and generally normal mental status examination findings limited to mostly mood symptoms, as well as good ability to perform activities of daily living from a mental standpoint. (e.g. Exhibits 8F, 14F, 19F, 20F)

The undersigned does not find the portion of Dr. Foster's 2020 opinion that the claimant has mobility limitations to be persuasive, as this is outside the scope of his evaluation and area of practice. (Exhibit 9F) Furthermore, his report does not note any difficulties with physical functioning. While some physical limitations are supported by the record, this portion of Dr. Foster's opinions is of minimal value in arriving at this conclusion.

(Tr. 27-28).

The ALJ compared both evaluations and found that both mental status examinations were generally normal and very similar, which were more supportive of the less restrictive residual functional findings in the earlier report. (Tr. 27). The ALJ also found that based on the similar mental status examinations, the later report was unsupported and inconsistent. (Tr. 27). The ALJ also found that the later

restrictions were inconsistent with the generally normal mental status examinations found in the record that were mostly limited to mood symptoms and inconsistent with Plaintiff's activities of daily living from a mental standpoint. (Tr. 27).

As with Dr. Merin's opinion, Plaintiff argues that other evidence supports Dr. Foster's opinions, such as January 2022 report finding Plaintiff's speech was decreased in rate and rhythm, mood was depressed, and affect restricted and a February 2022 progress note, which found Plaintiff's insight and judgment impaired. (Doc. 18, p. 11; Tr. 754, 755). These records as well as the others cited by Plaintiff do not support Dr. Foster's residual functioning findings that Plaintiff would: relate inadequately to peers, supervisors, and the public; have fair memory and concentration; have trouble completing a normal workweek; have serious interruptions from her psychologically based symptoms; have low coping abilities; and would be unable to keep even a low stress job. Here, the ALJ considered the supportability and consistency of both of Dr. Foster's opinions and found that the earlier opinion was better supported and the later opinion was unsupported by Dr. Foster's own examination and inconsistent with the other evidence of record. Substantial evidence supports the ALJ's evaluation of Dr. Foster's opinions.

## B.   Mental Limitations in the RFC

In the decision at step two, the ALJ found Plaintiff had mild impairments in all four broad functional areas, known as the "paragraph B" criteria. (Tr. 13-14). As

such the ALJ found Plaintiff had mild limitations in: understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. (Tr. 14-15).

Plaintiff argues that the ALJ erred by not clearly articulating how she considered the mild mental limitations she found in the four broad functional areas in the RFC formulation and the hypotheticals to the vocational expert. (Doc. 18, p. 13-14). Plaintiff specifically challenges the ALJ's finding that Plaintiff could return to her past relevant work as a medical assistant, a job that she contends requires a significant amount of focus and concentration. (Doc. 18, p. 16). And Plaintiff also challenges the ALJ's alternative finding that she could perform work at the semi-skilled level in other jobs such as a phlebotomist or medical records clerk. (Doc. 18, p. 16).

Plaintiff claims that the ALJ did not provide sufficient reasons for a reviewing court to determine whether the proper legal analysis was conducted, relying on *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1251 (11th Cir. 2019). (Doc. 18, p. 13). In *Schink*, the administrative law judge only discussed Schink's physical impairments in the RFC assessment, and only mentioned the plaintiff had bipolar disorder with no real discussion of how this mental condition affected the plaintiff's RFC. *Id.* at 1269. The Eleventh Circuit remanded *Schink* in part because whether severe or not, the administrative law judge was required to consider a plaintiff's

mental impairments in the RFC assessment, but failed to do so. *Id.* at 1251, 1269.
*Schink* is easily distinguishable from this case.

In this case, when assessing the RFC, the ALJ thoroughly summarized
Plaintiff's subjective complaints and the medical providers who treated and
evaluated Plaintiff's mental health. (Tr. 18-28). The ALJ then carefully considered
Plaintiff's mental limitations in assessing Plaintiff's RFC:

> Regarding the claimant's mental functioning, the undersigned
> acknowledges the findings noted by Dr. Merin in July 2019
> were suggestive of a cognitive disorder; however, the rest of
> the record outside of this evaluation does not show the claimant
> demonstrated any cognitive difficulties outside of this
> appointment, including at later psychological evaluations. (e.g.
> Exhibits 4F, 9F, 17F) Rather, the record reflects that her mental
> functioning was adequate to perform basic activities of daily
> living without significant interference. Her primary care
> provider consistently noted that her anxiety and depressive
> symptoms were stable and did not indicate any cognitive
> issues. (e.g. Exhibits 6F, 8F, 14F) In fact, consultative
> examining physician Dr. Patel noted at the claimant's May
> 2021 physical examination that the claimant reported trouble
> sleeping, poor appetite, and crying spells secondary to her
> anxiety and depression, but these symptoms did not limit her
> working. (Exhibit 16F) Although the claimant's history of
> alcohol misuse is noted throughout the record and it does
> appear that she continued to consume alcohol at varying
> degrees since the amended alleged onset date, there is no
> indication that her alcohol use caused more than mild
> limitations in her ability to perform basic work activities,
> individually or in combination with her stable depression and
> anxiety. Notably, she is physically and mentally able to care
> for her mother and other elderly adults and has expressed intent
> to return to her prior job as a CNA (*sic*, likely CMA, or
> certified medical assistant). (e.g. Exhibits 5F, 14F) This is also
> corroborated by statements from her mother, who indicated in
> a function report that she was aware the claimant had sustained
> injuries in her various motor vehicle accidents and had pain,

> but that she rarely complained of pain and did not let her
> physical or mental symptoms hold her back. (Exhibit 13E)
> Overall, the totality of the evidence reflects an individual with
> some chronic pain and poorly controlled hypertension that
> limit her to less than the full range of light exertional work
> activity. . . .
>
> These [RFC] limitations are consistent with the claimant's
> ability to perform basic activities of daily living without
> significant interference from mental symptoms, and are
> sufficient to limit the claimant's stress levels to avoid an
> exacerbation of her mental symptoms, including any mood
> symptoms, anxiety, or compulsion to engage in substance use.

(Tr. 24-25). The ALJ thoroughly considered Plaintiff's mental impairments when assessing the RFC and determined they would not cause any additional limitations other than those assessed in the RFC.

Moreover, in finding at most mild impairments, other courts have found the ALJ was not required to include any mental limitations in the RFC. *See Faircloth v. Comm'r of Soc. Sec.*, No. 6:21-cv-782-EJK, 2022 WL 2901218, at *2 (M.D. Fla. July 22, 2022) ("Notably, an ALJ is not required to include mental limitations in the RFC finding merely because he identified mild mental limitations in the PRT criteria.") (citing *Williams v. Soc. Sec. Admin.*, 661 F. App'x 977, 979-80 (11th Cir. 2016) (per curiam)). Here, the ALJ considered all of Plaintiff's impairments, including any mental limitations, in assessing Plaintiff's RFC. For these reasons, substantial evidence supports the ALJ's RFC assessment and hypothetical to the vocational expert.

## III.    Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on June 26, 2024.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Counsel of Record
Unrepresented Parties